Thank you. The first case we'll hear today is Arcelik v. EI Dupont, number 20-1869. I see one council, or both council here, I think that you're supposed to be. Mr. Rosenberg and Mr. Sessions, are you both here? We're here, Your Honor, yes. Okay, terrific. So we'll hear from Mr. Rosenberg first. Will you be reserving any time? Yes, three minutes, please. Okay, great. That's granted. And just first off, good morning and welcome. We're happy to have you. Good morning. Even if it's by Zoom, but we're happy to hear you and read your briefs. I'm going to be keeping time. The same rules apply. You'll have a total of 15 minutes, 12 minutes for your principal argument. I'll keep time, I suggest you do the same so you don't get surprised. And without further ado, you may proceed. May it please the Court, Lawrence Rosenberg for TDK Electronics and TDK India. My clients have no claims in this case. They're not parties, and they're not even subject to the jurisdiction of the United States courts. Yet their crown jewels and designs for their capacitors are at risk because the lower courts did not follow controlling precedent. The courts below erred as a matter of law in three essential ways. First, they did not properly account for Germany's and India's interests in the Hay Convention analysis. Second, they did not even attempt to narrow the requests to make them less burdensome or less problematic. And third, they did not properly account for the sources of information here. On the one hand, that Archelic and DuPont already possess much of the information requested. And on the other, that Andreas Vogel is retired, is not a proper representative of TDK, and is not properly able to testify about confidentiality. Excuse me, these are all good things, but don't we first have to decide whether we have appellate jurisdiction here? The order at issue did not end the litigation. It has not resolved any claim by Archelic or the defense by DuPont. Doesn't that make the magistrate judge's decision non-dispositive? The underlying case is still proceeding in federal court. Doesn't that distinguish it from the section 1782 and administrative subpoena cases where there is an underlying federal case? Yes, Judge Sarek, I don't believe so. I think that there are several reasons why there is appellate jurisdiction. The first and most important is that the litigation is over as to TDK. We have no further role in the case. The letters of request are our only involvement. Thus, under this court's decision, such as Inree Madden and the R.J. Reynolds case that we cited in our briefs, it is final and appealable as to TDK. We simply have no other opportunity to appeal this case later. We're a non-party, so appealing this at the end of the case really isn't an option for us. Secondly, what is your best avenue for appellate review? You raised a couple of different ways to do it. I think the best avenue is just direct appeal. I do think the collateral order doctrine is an alternative that I think does apply here because we're dealing with trade secrets, but I really think the best avenue is the direct appeal because this is final as to TDK. I actually think the 1782 circumstance helps us a great deal and is highly analogous because in a 1782 proceeding, the only issue as to the party from whom discovery is being sought is the discovery. That's exactly the same as here. I've handled dozens of 1782 cases and a number of Hay Convention cases, and they're very similar at this stage. In the 1782 context, you have a subpoena, and the court either approves it or it doesn't initially. If the court denies the subpoena, that's immediately appealable. Here, we have letters of request. The court issues them or either way, we believe that it is immediately appealable for TDK when this is our only avenue of appeal. It's a very close- Isn't it enough that you can fight that fight in Germany and India? Nothing really has happened. There really isn't any discovery that's been taken. Can't you fight that fight there, and wouldn't that render this non-final? No, Judge Rendell, for a couple of reasons. First, the Indian and German proceedings are part of the US proceedings under the federal rules or any other principle of appellate procedure, and so the possibility of fighting which would be a different fight in Germany or India doesn't render this case non-final. More to the point, under the key comity analysis of Aerospatiale, it really is up to the United States courts to first tailor the requests to make them as unobtrusive as possible, not to simply leave that for the German and Indian courts. I just want to your honors that in the letters of request themselves, if you take a look, for example, at JA 175, the language is if this is an order of a district court, it says the district court asks these to obtain this evidence. It says the court requests assistance as necessary and in the interests of justice. It says the evidence sought has a direct and necessary link with this dispute over which the district court is currently presiding and is expected to be a trial in these actions. With respect, the German and Indian courts simply don't have the capacity to assess whether this statement of a US district court is accurate or not, and so putting the onus on them to try to resolve all of this is actually what itself violates international comity. These courts, which have very different discovery systems, are not used to the kind of discovery we have in the United States. Well, almost never. Counsel, could it also be viewed as giving those foreign courts some flexibility to decide how and basically how it will be complied with this order? I don't think that's the right way to look at it, Judge Chigares, because they are getting an order saying we, the US district court, say we need this. It's necessary. It's critical. And you're putting the other court in a very difficult position, even if under, for example, German law, there are defenses you could raise to discovery, potentially, but you're putting the German judge in a situation where he or she either has to follow the US district court's request or not, and that's a very difficult position to be in. Think, for example, if a US district court were given a request from France for information where the French authorities say it's critical to their case, I think a US district judge would be very reluctant to go against that, even if there might be some defenses. It puts the foreign court in this very difficult position. Mr. Rosenberg, I'm kind of surprised that at the outset you didn't challenge the standard that Judge Stark used in reviewing the magistrate judge's ruling. I thought that was one of your principal contentions, namely that this was a dispositive motion, so it has to be remanded for further proceedings. Isn't that one of your contentions? It is, it is, Your Honor, and I'm happy to address that. This is not the end of the matter for the parties. This is just a collateral proceeding. How can you contend that this is a dispositive order, a dispositive ruling? Because, again, very similar to the appellate jurisdiction point, it's dispositive as to TDK. It resolves all of the claims in the case as to TDK. That's the language in the Fraser case, the EOC versus the City of Long Beach. But Fraser had to do with the parties. They were going to be out of court. They were going to have to go to the administrative procedure to the agency. They were going to be out of court. Are you saying any time there's an order vis-a-vis third-party discovery that this is dispositive? That's not what the case is saying. If there's no alternative for the third party, like if it's a third party in the United States, I think our opponents have made the argument that instead of complying, they could take a contempt order. That might mean that it's not dispositive. But in this case, because TDK doesn't have that opportunity, because the proceedings are truly over with respect to TDK, there's no further supervision by the district court of the discovery. It really is dispositive as to them. And, again, it's very analogous to 1782, where those are considered dispositive and where there's a split. There's a split of authority as to whether that's dispositive or not. And in the Sales case, specifically, they said this type of order was not dispositive. Isn't that pretty well-reasoned? Well, actually, I believe in the Sales case, unless I'm misremembering the case, I believe the court said that arguably it wasn't, but then said as an abundance of caution, I'm going to treat it as dispositive. So I think that case actually helps us more than hurts us. And, again, I think that if you look at the 1782 context, while I agree there may be some split, the vast majority of the case is treated as dispositive. It's been held dispositive in virtually every 1782 case I've been involved with. So your contention is this needs to go back to the district court for them to perform the correct analysis under de novo review? Yes, that's one of our contentions. And we believe that that is for that reason, Judge Rindell, but also for all the other reasons that we believe that the decision was erroneous. I just would like to commend to the court Judge Roth's concurring opinion in the Enri auto refinishing case. I think that opinion is very sage, and that Judge Roth noted not only the special vigilance that Aerospatiale requires in these contexts, but also notes her concern that the U.S. district courts are not experts in foreign law and proceedings, and the concern that those courts would give short shrift to the comity analysis and simply effectively rubber stamp letters of request. But Aerospatiale dealt with the civil rules, which was a different situation than going under the Hague Convention. And also, I think that automotive refinishing applied an abuse of discretion standard, not a de novo standard there. Well, the circumstances were a little different there, but you're right about Aerospatiale. It was a question of whether the civil rules or the Hague Convention applied. But in the course of that, the court laid out these comity findings. And in footnote 28 of that decision, the court specifically said that the five factors we're talking about applied to any comity analysis. And I believe the court made very clear that there is a comity analysis whenever issuing letters of request. Is it lessened if you go under the Hague Convention rather than under the federal rules of civil procedure? Well, I think once you go under the Hague Convention, that's where the comity analysis really kicks in. I think there's a comity analysis at the outset as to whether you use the federal rules instead of the Hague Convention. And then once you're in the realm of the Hague Convention, there's a second comity analysis that needs to be performed. Yeah. Yeah. Yeah. So I... Can I just ask for a second, counsel? Just asking what Judge Rendell asked in a maybe slightly different way, but which of the dispositive motions listed in the Federal Magistrates Act most resembles your motion? I don't have the Federal Magistrates Act in front of me, but I do think that this is a And so I think that that is close enough to what's in the Federal Magistrates Act, that this should be treated as dispositive, again, because there's no opportunity for TDK to appeal this. At the end of the case, no opportunity to take a contempt order, no opportunity to do the things that might render it non-dispositive or non-final. And I do think that the court in sales had it right. If there's a question, I think the court should treat it as dispositive. And I think there's more than a question here. I think it's compelling that this really is a dispositive issue. I see my time is running out. There's one last point I'd really like to emphasize, which is that the courts below didn't even attempt to narrow these requests at all. And I will tell you, I've been involved in a lot of these cases. This is the first and only case I've been involved in where the district court, whether a 1782 or Hague Convention case, didn't even attempt to narrow the requests to make them less burdensome. That, I think, is just a pretty substantial error that should be corrected on remand. And then the final point, which I haven't addressed too much, are the sources of information. Archelic has the vast majority of the information that's been asked for here. And I think that wasn't accounted for at all. The district court and the magistrate judge didn't even discuss what information might already be in Archelic's possession. The district court and the magistrate judge didn't even consider the fact that Flogel is not an appropriate representative for TDK. There was briefly mentioned in passing that he might have relevant information, but the letters of request asked for him as a representative of TDK. If there are no further questions, I reserve the rest. I have one, counsel. If we agree with you that there was two deferential standard applied, are we authorized to or should we consider the merits under the correct standard rather than remanding? I think the court could do that. I think it would also be appropriate to remand for application of the correct standard. I do think the court could address the merits if it believes it's appropriate to do that under the correct standard. I don't think there's anything that prevents that. But I think perhaps the more path would be to remand for further consideration. Okay. Judge Stryka, do you have anything more? Yes, I have. I have one question with respect to the protective order and the trade secrets. I understand that that was made. Actually, there was an order that was entered by the district court that incorporated the protective order, and that's now part of letters of request. Please let me know if I'm right on that. But with respect to the trade secrets, why can't this be handled by the courts in India and in Germany? So, Judge Stryka, a couple of things to respond to that. First, there is a protective order. You're correct. I don't believe it's been made part of the letters of request. I don't know that it has been. I don't believe, to the best of my knowledge, that DuPont has served that protective order. Perhaps they have, but I'm not aware of that. But one of the reasons that we don't believe that it's sufficient for the German and Indian courts is, number one, that protective order is not necessarily enforceable in those courts. It's not clear that those courts would accept that protective order because it's inconsistent in many ways with German and Indian laws. Germany and India, even though they protect trade secrets, and this is in the record of JA 220 to 226, they don't almost ever ask them to be disclosed. They never order them disclosed. So, they don't have the procedures as a standard matter to protect them. They don't have standard protective orders. They don't seal courtrooms. They don't have confidential court files. And so, for example, for Mr. Fogel, if he's testifying, he's going to be testifying in because the German courts just don't have the procedures to do it because they almost never order trade secrets disclosed in the first place. So, that's a real problem that we believe that wasn't properly considered by the courts below. Does that answer your question, Judge Sarekha? Yes. Do you have any suggestions how it could be handled? In Germany or India? No, here. Well, I think the way to do it is to... Talk about narrowing the order. Narrow the requests. I mean, we offered before the magistrate judge, quite frankly, I pleaded with the magistrate judge, you know, let's get together and try to narrow these and see if there's some very specific information that DuPont really needs that doesn't really disclose our trade secrets, right? Instead of giving them the designs, maybe there could be one question, you know, is there a test report that shows X or Y? Can you please explain the Maybe there's a way to give them the information they really need without disclosing the trade secrets. But the lower courts didn't adhere to that, didn't follow that suggestion. And thus far, you know, we've had no overture from DuPont about trying to narrow them. Thank you. Thank you. Judge Rendell, do you have anything more? No, I don't. But Judge Segarra, there seems to be some background noise, almost like there's a television or something on. Do you hear that? Yeah, I would ask that everyone mute themselves if they're not speaking. Okay. Okay, terrific. Thank you, Judge Rendell. All right. Thank you, counsel. We'll hear from your adversary right now. Thank you, Your Honor, and may it please the court, John Sensing for Apelli E.I. DuPont Dana-Moores and Company. I would like to begin with It must be your computer because I'm hearing that again. Judge Rendell, you hear that as well? I'm hearing it as well. There's a television or something's on in someone's background. Maybe it's is it one of us? Does anybody have? Is anybody streaming the YouTube in their background? It could be picking that up. It just went silent again. Okay, great. It could have been me, Your Honor. I have on my cell phone a stopwatch app, and I had it right next to my computer. Maybe that was causing some interference. Sounds like it's picking up a television, or I think Lisa's right. I think it's like a somebody streaming. Now it's off again. Better. Now it's back on. All right. We'll pay extra attention to you. Everybody who's on, just make sure if you're using like a separate set of speakers or whatever, that it's not super close to your machine because it could just be speaker interference. Okay, thank you. It sounds much better right now. Okay. Thank you, Ms. Mignon. She is our IT person par excellence, so thank you for helping us out. Okay, Counselor, you haven't lost any time yet. In fact, time hasn't even started, so you're good. Then I'll restart, Your Honor, with your permission. Again, may it please the court, John Sensing for Apelli EI DuPont Dana Morrison Company. I'd like to begin with jurisdiction since that is the threshold issue here. There are three reasons that we identify in our brief as to why the district court's ruling was non-final and why this court accordingly has no appellate jurisdiction. The first reason was there has been no finality to the district court's ruling. PDK can and has objected to those letters of request overseas. My colleague mentioned the wording of the letters of request in his presentation. I think the wording of it is important because it is clear that the district court is requesting assistance. It is not ordering the German court to do anything. It's not ordering. But where else can TDK appeal the grant of the letters of request? There's no other way other than what it has done, and that is come to us. Is there any other way it can get an appeal? Not in the United States courts, Your Honor, but they can go to Germany and India and essentially do what they're doing, which is try to quash the discovery. But they have no way to appeal what Judge Stark held. No way to appeal it. Isn't that the rule under Madden? Isn't that the standard we look at? Well, I think you look at whether there's actually finality, Your Honor, and our point is there's not finality. Well, how do you define finality? It can't just be the end of a case. No. I'm sorry, Your Honor. No, I do not define it as the end of the case. I would define it when as to an issue and a litigant like TDK has no further remedy. And here they have the remedy of being able to go to Germany, to go to India, and the court below was very clear and was very clear. Why not go under the collateral order doctrine to give appellate jurisdiction on this issue? Certainly, Your Honor. First, the collateral order doctrine is narrowly applied. TDK has to establish the three factors that are set forth in this court's flat glass case. And one of those three factors is that it has to conclusively resolve, the district court must conclusively resolve the disputed issue. And contra TDK's arguments, the district court did not conclusively resolve the issue of the production of trade secret information, or the production of any information at all. The district court specifically ruled that the production of information was subject to whatever protocols, whatever procedures that TDK could convince the German and Indian judge Stark's ruling effectively denied all trade secret protection. That is wrong, in our opinion, because in the ruling that is appealed from the court below specifically directed the parties to enter into the protective order. Whereas if a post discovery dispute arises, TDK can go to the district court and seek review. If they think we are potentially misusing or there's protections that need to be implemented, they can go to the district court. And Carco Electronics draws a contrast between orders, like the order of the court below that grants some protection to trade secrets, and those that deny all protection to trade secrets. And the former orders like we have here are not final. So, Your Honor, I don't believe the collateral order applies here, since we have an order that explicitly is intended to at least give some protection to trade secret information. So, therefore, under Carco, it's non-final. How about the other two steps? I mean, can you really dispute this is an issue separate from the merits and that it's effectively unreviewable? Your Honor, thank you. We do not dispute that in our brief. No. But at the same time, TDK must establish all three of the factors. And this court's precedent is clear on that. Your Honor, I'd like to turn now to the standard of review, if I could. And Mr. Rosenberg spent some time talking about that. Again, to be clear, DuPont believes this appeal should be dismissed for lack of jurisdiction. But if this merits, it should review for abuse of discretion. It's well settled in this circuit that discovery orders are reviewed for abuse of discretion. TDK has not provided any reason to depart from that standard. I don't think they're arguing that. I mean, we review for abuse of discretion, but didn't Judge Stark abuse his discretion if he used the wrong standard in reviewing what the magistrate judge did? So abuse of discretion means contrary to law. And if he did apply the wrong standard, i.e. clearly erroneous as compared to DeNovo, then wouldn't we hold that he abused his discretion? I think you could, Your Honor, but I don't think he incorrectly applied that. And I think TDK does make... Because we have a non-dispositive order, is that what you're saying? That's correct. It's non-dispositive. And TDK does argue, to be clear, Your Honor, that they make two arguments about why they believe there should be DeNovo reviewed. The second is what Your Honor knows. They claim that Judge Stark was overly differential to the magistrate judge and that he should not have applied the clearly erroneous standard. But as Judge Chigaris noted in my colleague's presentation, this is not a dispositive order under Section 636B1A. So the Federal Magistrates Act, the dispositive motions, they're reviewed DeNovo, of course, but the non-dispositive motions are reviewed under the more deferential standard. Now, some courts tell that 1782 orders are dispositive. How would you distinguish this situation from that? I would distinguish this situation, Your Honor. I would do that because I believe those 1782 decisions, we view those as just confirming that the proper forum to review foreign discovery requests is the state that receives them. And the reason why I think courts have said that 1782 requests are immediately appealable is because that is all that happens in the state that receives the request. They either, you know, they grant the application or they do not, and then it's all over. That's not the situation we have here because it's not all over. Cases are a little bit murky. I couldn't help but Supreme Court case from 1987. I mean, it really emphasizes we have to exercise special vigilance to protect foreign litigants. It says that we have to, district courts have to supervise these things particularly closely and that they should receive the most careful consideration. Shouldn't we, I mean, considering that, those statements by the Supreme Court, shouldn't it be a more, I guess, a less deferential and more exacting standard that we use, that the district court uses to review this kind of thing? Well, I don't think so, Your Honor. And I think this court's opinion in the automotive refinishing case is on point. And in that decision, this court applied de novo review to a very narrow, purely legal question of whether the Aerospatiale holding applied to jurisdictional discovery. And then the court held that the district court's rulings as to whether the appellants had satisfied Aerospatiale's balancing test as to whether to resort to the Hague Convention or the federal rules in jurisdictional discovery, that decision was reviewed for abuse of discretion. And that is what TDK is asking the court to review here. They are asking the court to review the district court's rulings that under Aerospatiale's five-pronged comedy test, that the letter of request should not be vacated. And the cases they cite in their brief, they cite In re Bayer AG and they cite Redland Soccer, both of those cases demonstrate that de novo review is improper. Because we have a situation, both those cases say, and the Bayer court in particular says, a district court's decision to deny a 1782 application, that's reviewed for an abuse of discretion. And in Redland Soccer, this court says the standard that the court used to exercise rulings on discovery issue, those are reviewed de novo, but the discovery rulings themselves are reviewed for abuse of discretion. And TDK is not disputing their propriety of using the five factors set forth in Aerospatiale when it reviewed comedy. TDK doesn't like how Judge Stark applied those factors. So that finding and those findings of Judge Stark should be reviewed for abuse of discretion. Was this request narrowly tailored? Was it focused? Was it particularized? Your opponent says that it should be. And that's the way most of these cases proceed. What in particular, what can't you get from Arcelec in this case? Could you get most of the information that you can narrow this request? I don't believe that we could get most of it. I believe there may be some that is overlapping, but a lot of what we're asking for are internal TDK documents. And TDK and Arcelec are communicating during these dryer fires. And we can get from Arcelec, TDK, Arcelec communications. But what we can't get is how TDK is reacting to these fires. We can't get internal TDK deliberations about how the narrow specific plastic of these capacitors is designed or how in this again, narrow, very specific part of the capacitor, how these materials are selected. As far as testing, we ask what testing they've done. And frankly, your honor, I believe that's about as narrow as we can make it while seeking meaningful information. Either TDK tested the capacitors or they didn't. And if they did, seeking identifications of those tests. So, and again, TDK made these arguments below to Judge Stark. Judge Stark found that TDK's persuasive. And based on that, he refused to narrow the request that in our view should be reviewed for an abuse of discretion. And we don't believe it was an abuse of discretion. I want to turn briefly, if I could, your honors, to a couple other arguments that my colleague made first about... Can I ask you before you get there, I mean, if we think there was zero in the standard review that Judge Stark applied, can we conduct that to keep this moving? I believe your honor that the proper thing to do there would be to send it back to Judge Stark and remand and say, your honor misapplied the standard, you were too deferential to the magistrate. You should now apply the correct standard and we go from there. I mean, I certainly, I think the court may have the power to do so, but in my view, it would be more proper to remand there as much as I don't want to delay this any further. Right. Okay. So your honor, I have just a couple minutes. I do want to turn to a couple other of the arguments that my colleague raised. On the interest balancing, the district court correctly held, and I don't believe TDK really challenges that the United States has an interest in having litigants who are sued be able to assert discovery and be able to prepare defense. But I do want to respond that the discovery sought does not undermine German or Indian interests. TDK argues that the district court, in essence, told German and Indian courts to ignore their own trade secret law. And that is just not the case. Again, as we've discussed, the district court, again, very cognizant of the burdens on TDK, required the parties to enter into an extensive protective order, whereby TDK's information is protected. And the district court didn't tell the German and Indian courts anything. TDK can seek, and they have sought, to protect their claimed interests in the German and Indian courts. Finally, very briefly on Mr. Flogel, I do want to mention that quickly. He was named individually because German law requires that you name an individual. You can't just essentially have a 30 B6. And the fact that he's no longer employed by TDK does not mean that he doesn't have relevant knowledge. And Judge Stark made the factual finding that he does have relevant knowledge. So the fact that he's named is not a reason to reverse any rulings of the courts below. And with that, I see that my time is up, unless your honors have any questions. Judge Sreka, do you have any questions? With respect to that last statement, I believe that Judge Stark said that an alternative to Mr. Flogel could be suggested by TDK. Has that taken place, or what's the status of that, or is that insufficient? There is no alternative. Your honor, nothing has been suggested by TDK. I assume that is because they've been challenging any discovery at all in Germany. If the German court rules that they have to put someone forward, they may come and offer us someone else at that point. But they have not at this to date, your honor. Judge Rendell, do you have anything? I have nothing further, nothing. Okay, great. Well, thank you, counsel. Thank you, your honor. We'll hear from Mr. Rosenberg in rebuttal. Thank you, your honor. Just a few points in rebuttal. First of all, I want to focus on a because I think they concede some of the issues in the case. First, he said he agreed that there's no further way for TDK to challenge this case in the United States. I think that effectively concedes finality under our view of the law and establishes that there is appellate jurisdiction. Secondly, he concedes that some of the information that they requested could be obtained from 11 of the 15 are things that involve communications with or information that Archelic possesses. And I think that's more than just some, that's actually the majority of the information. The only thing he says that we can't or they can't obtain from Archelic are our trade secrets, which again, are very broad. One of the things that's asked for the designs of our entire capacitor, that's not limited. It's very similar to the kinds of said is very burdensome. The next point I'd like to make is going back to judge Shigaris, your question about the federal magistrates act. I have pulled that up and I think the thing that it is probably most similar to in that act is the motion to suppress evidence in a criminal case, because that is a singular thing going at specific evidence. It either gets produced or it doesn't. The next point I'd like to make is on the question of the standard of review. I agree that we're making at the lower court misapplied, the standard magistrate judge, and that this court at least reviews the legal issues de novo. And I would note that in the Inri Baer case, this court said that it is both the articulation and application of the legal factors that is reviewed by this court for errors of law. And in our view here, while it is true that the courts may have paid lip service to the five factors in, we believe really ignoring the German and Indian interest in not narrowing and not considering the sources of information, that's not just a factual clear error review. That's not weighing facts. That's simply not undertaking the correct analysis. And so we believe that would obtain de novo review. And I would just like to mention on Mr. Flogel, we also said to DuPont, if you can name somebody else, we'll consider whether that's a proper party. And they've never tried to name anyone but Flogel. The situation in Germany is very, is at its nation stage. There's been no ruling whatsoever on the discovery there. There aren't any proceedings right now in India that we're aware of. So I don't believe that is a legitimate avenue for us to get relief certainly at this point. Does the court have any further questions? I do not. Judge Sirica, do you have any? No, I do not. Okay. Judge Rendell, no? Nothing. Thank you. Thank you. Well, we'd like to thank counsel for their excellent oral arguments today, as well as their excellent briefs. We'll take the case under advisement. And we again thank counsel for participating in oral argument via Zoom. We wish you and your families good health. And thank you again. And we'd ask that the court call the next case. Thank you. Thank you.